IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ROBERT SCOTT OSBORN, | )<br>) |
| Petitioner, | )<br>) Case No. CV  06-481-S-MHW<br>) |
| v. | ) **MEMORANDUM DECISION**<br>) **AND ORDER** |
| MICHAEL J. ASTRUE,<br>Commissioner of Social Security<br>Administration, | )<br>)<br>)<br>) |
| Respondent. | )<br>) |

## Introduction

Currently pending before the Court for its consideration is Petitioner Robert Scott Osborn's ("Petitioner") Petition for Review (Docket No. 1) of the Respondent's denial of social security benefits, filed November 30, 2006. The Court has reviewed the Petition for Review and the Answer, the parties' memorandums, the administrative record (AR) and for the reasons that follow, will remand the decision of the Commissioner.

### I.
### Procedural and Factual History

Petitioner filed an application for Disability Insurance Benefits and Supplemental Security Income on October 1, 1999, alleging disability due to rotator cuff syndrome, back pain,

and asthma. (AR 199). Petitioner's application was denied initially and on reconsideration, and a request for a hearing was timely filed. Administrative Law Judge Arkoosh held a hearing on September 19, 2000, and the Appeals Council denied an appeal of this decision on March 12, 2001. (AR 220). Petitioner did not appeal this denial.

Petitioner filed a second application for Disability Insurance Benefits and Supplemental Security Income on November 9, 2000. (AR 373). He amended his disability onset date from September 10, 1999, to April 1, 2001, again alleging that he was disabled due to rotator cuff syndrome, lower back and leg problems, and asthma. (AR 376).

ALJ John Arkoosh held a hearing on July 23, 2001, taking testimony from Petitioner and vocational expert James Grissom. (AR 596-634). ALJ Arkoosh issued a decision finding Petitioner not disabled on September 10, 2001. (AR 392). This decision was remanded by the Appeals Council on March 8, 2002, for further consideration of Petitioner's residual functional capacity. (AR 434-435). A second hearing was held before ALJ Gilbert Martinez on March 20, 2003, and testimony was taken from Petitioner, vocational expert Anne Aostum, and medical expert Dr. Keith Pearson. ALJ Martinez issued an unfavorable decision on April 25, 2003. (AR 635-680; 408). ALJ Martinez's decision was remanded by the Appeals Council on September 24, 2004, again to consider Petitioner's residual functional capacity in light of additional evidence. (AR 444-446). A third hearing was held before ALJ Robin Henrie on March 7, 2005, at which Petitioner and vocational expert Dina Galli testified. (AR 681-717). ALJ Henrie found petitioner not disabled. (AR 17-34).

Petitioner filed a timely appeal to the Appeals Council on July 13, 2005. The Council denied his request for review, making ALJ Henrie's decision the final decision of the

**Memorandum Decision and Order - Page 2**

Commissioner. (AR 6-9). Petitioner appealed this final decision to this Court. The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time of the hearing before ALJ Henrie, Petitioner was 48 years old. He has a tenth grade education and his past relevant work includes work as a mechanic and radiator man.

## II.
## Sequential Process

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, it must be determined whether the claimant is engaged in substantially gainful activity. The ALJ found Petitioner had not engaged in substantial gainful activity since his alleged onset date. At step two, it must be determined whether claimant suffers from a severe impairment. The ALJ found Petitioner's asthma, arthritis, degenerative joint disease of the knees and shoulders, status post left hip surgery, and degenerative disc disease of the cervical and lumbar spine with osteoporosis due to long term use of prednisone for asthma are "severe" within the meaning of the Regulations. Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Petitioner's impairments did not meet or equal the criteria for the listed impairments, specifically the listing for disorders of the spine. If a claimant's impairments do not meet or equal a listing, the Commissioner must assess the residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found Petitioner was not able to perform his past relevant work as a mechanic or radiator man. If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to other work that exists in significant levels in the national

**Memorandum Decision and Order - Page 3**

economy, after considering the claimant's residual functional capacity, age, education and work experience.  The ALJ found that Petitioner, despite his impairments, retained the residual functional capacity to do a limited amount of sedentary work, including surveillance systems monitor, food and beverage order clerk, and telephone quotation clerk.  ALJ Henrie therefore issued a finding of not disabled.

### III.
### Standard of Review

The Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Fitch*, 438 F.2d 920, 921 ((9th Cir. Cir. 1971).  An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he not only cannot do his previous work but is unable, considering his age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Social Security Commissioner if the decision is supported by substantial evidence and is not the product of legal error. 42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel,* 172 F.3d 1111, 1113 ((9th Cir. Cir. 1999) (as amended); *DeLorme v. Sullivan,* 924 F.2d 841, 846 ((9th Cir. Cir. 1991).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla but less than a preponderance, *Jamerson v*

**Memorandum Decision and Order - Page 4**

*Chater,* 112 F.3d 1064, 1066 ((9th Cir. Cir. 1997), and "does not mean a large or considerable amount of evidence."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist which supports the petitioner's claims.  42 U.S.C. § 405(g); *Flaten v. Sec'y of Health and Human Servs.*, 44 F.3d 1453, 1457 ((9th Cir. Cir. 1995).   Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive.  *Flaten*, 44 F.3d at 1457.  It is well-settled that if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner."  *Verduzco v. Apfel,* 188 F.3d 1087, 1089 ((9th Cir. Cir. 1999).

In reviewing a case under the substantial evidence standard, the Court may question an ALJ's credibility assessment of a witness's testimony; however, an ALJ's credibility assessment is entitled to great weight, and the ALJ may disregard self-serving statements.  *Rashad v. Sullivan*, 903 F.2d 1229, 1231 ((9th Cir. Cir. 1990).  Where the ALJ makes a careful consideration of subjective complaints but provides adequate reasons for rejecting them, the ALJ's well-settled role as the judge of credibility will be upheld as based on substantial evidence.  *Matthews v. Shalala*, 10 F.3d 678, 679-80 ((9th Cir. Cir. 1993).

### IV.
### Discussion

Petitioner believes the ALJ erred at the third and fifth steps of the sequential evaluation process.  He specifically contends that the ALJ did not consider the opinion of his treating physician, Dr. David Hanscom, that Petitioner met the requirements of listing 1.04C relating to

**Memorandum Decision and Order - Page 5**

spinal disorders. Petitioner also maintains that the ALJ improperly rejected his testimony concerning his pain, thereby resulting in an improper residual functional capacity assessment. Finally, Petitioner maintains that the ALJ's finding that the sedentary occupational base was not significantly eroded due to his inability to stoop was in error. The Court will address each of these arguments in turn.

**A.      ALJ's Evaluation of Listing Criteria.**

The Petitioner argues that the combination of his physical impairments meet or equal the criteria in the medical listings at Appendix 1, section 1.04C of the regulations and, because the Petitioner is not engaged in substantial gainful activity, the ALJ's adverse decision must be reversed. 20 C.F.R. § 404.1520 and § 416.920. Petitioner relies upon the evaluation of his treating physician Dr. Hanscom, who opined that Petitioner's condition met section 1.04C relating to spinal disorders. (AR 487). ALJ Henrie, while giving weight to Dr. Hanscom's medical opinion, specifically rejected his conclusion that Petitioner met a listed impairment. In support of the decision, ALJ Henrie stated that Dr. Hanscom has "not supported his opinion with specific objective findings and signs such as would meet the criteria of the listing and his opinion is against the medical evidence of the record as a whole." (AR 20). The ALJ found that the "medical evidence of record does not document evidence of an inability to ambulate effectively," and does not document "profound thecal impingement or nerve root compression." (AR 27).

Generally, the statements and opinions of a treating physician are entitled to considerable deference, and must be given controlling weight if that opinion is well-supported and not inconsistent with the other substantial evidence in the case record. *Edlund v. Massanari*, 253 F.3d 1152, 1157 ((9th Cir. Cir. 2001) (citing SSR 96-2p). However, the ALJ is not bound by an

**Memorandum Decision and Order - Page 6**

expert medical opinion concerning the issue of disability. *Gallant v. Heckler*, 753 F.2d 1450, 1454 ((9th Cir. Cir. 1984). The final responsibility for deciding whether an individual's impairment meets or is equivalent in severity to the requirements of any listed impairment is an issue reserved to the Commissioner. Soc. Sec. Ruling 96-5p, 1996 WL 374183 at *2. Nevertheless, the ALJ must carefully consider a treating source's opinion about whether or not a claimant is disabled, and must give clear and convincing reasons for rejecting such an opinion when it is uncontradicted. *Gallant*, 753 F.2d at 1454. "When a treating source provides medical evidence that demonstrates that an individual has an impairment that meets a listing, and the treating source offers an opinion that is consistent with this evidence, the adjudicator's administrative finding about whether the individual's impairment meets the requirements of a listing will generally agree with the treating source's opinion." Soc. Sec. Ruling 96-5p, 1996 WL 374183 at *3.

Petitioner argues that the medical evidence supports Dr. Hanscom's opinion that he meets the criteria in section 1.04C. That section states:

> **1.04 Disorders of the spine** (*e.g.*, herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
> * * *
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

Section 1.00B2b defines the inability to ambulate effectively as:

> (1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that

**Memorandum Decision and Order - Page 7**

>interferes very seriously with the individual's ability to
>independently initiate, sustain, or complete activities. Ineffective
>ambulation is defined generally as having insufficient lower
>extremity functioning (see 1.00J) to permit independent
>ambulation without the use of a hand-held assistive device(s) that
>limits the functioning of both upper extremities. (Listing 1.05C is
>an exception to this general definition because the individual has
>the use of only one upper extremity due to amputation of a hand.)
>
>(2) To ambulate effectively, individuals must be capable of
>sustaining a reasonable walking pace over a sufficient distance to
>be able to carry out activities of daily living. They must have the
>ability to travel without companion assistance to and from a place
>of employment or school. Therefore, examples of ineffective
>ambulation include, but are not limited to, the inability to walk
>without the use of a walker, two crutches or two canes, the
>inability to walk a block at a reasonable pace on rough or uneven
>surfaces, the inability to use standard public transportation, the
>inability to carry out routine ambulatory activities, such as
>shopping and banking, and the inability to climb a few steps at a
>reasonable pace with the use of a single hand rail. The ability to
>walk independently about one's home without the use of assistive
>devices does not, in and of itself, constitute effective ambulation.

Although the ALJ's finding that the evidence did not document "profound thecal impingement or nerve root compression" was in error, there is substantial evidence to support her finding that Petitioner could ambulate effectively and thereby did not meet the listing in spite of Dr. Hanscom's opinion. To support her finding that Petitioner did not have nerve root compression the ALJ improperly relied upon Dr. Verst's opinion relating to Petitioner's cervical spine impairments. (AR 27). Dr. Hanscom's opinion, however, concerned Petitioner's lumber spine. His findings indicate Petitioner "does have neurogenic claudication with pain in his right leg with ambulation and confirmed by myelogram CT scan that shows a stenosis at L4-5 and also L5-S1." (AR 487). The CT scan taken on April 19, 2002, indicated that at L4-5 Petitioner suffered from a "congenitally small canal with mild to moderate facet arthrosis," resulting in

**Memorandum Decision and Order - Page 8**

moderate central canal stenosis. (AR 491). In the L5-S1 area, Petitioner's CT scan demonstrated "severe degenerative disc disease present with disc space narrowing," indicating "marked central canal stenosis" and "bilateral foraminal stenosis which appears worse on the right," with "splaying of the S-1 nerve root and root sleeve amputation." (AR 491). These findings, which are based upon an objective diagnostic test, do support the majority of the listing criteria.

However, the ALJ rejected Dr. Hanscom's finding that Petitioner does "have chronic pain and weakness resulting in an inability to ambulate effectively." (AR 27, 488). Dr. Hanscom relied upon Petitioner's self-report that he was only able to only walk 100 feet before pain overcame him. In support of her findings concerning ambulation, the ALJ relied upon Dr. Verst's opinion that on June 11, 2002, Petitioner's "gait is normal, showing no signs of myelopathic gait or antalgic gait." (AR 27, 481-82). Petitioner also testified at the hearing that, while it was difficult, he could drive himself to "the local store and grab a few items and come back." (AR 694). Thus, there is substantial evidence in the record to support the ALJ's finding that Petitioner could ambulate effectively despite his pain, and therefore did not meet all of the necessary listing criteria.

**B.     ALJ's Evaluation of Petitioner's Credibility as it Relates to His Subjective Complaints of Pain.**

Petitioner argues that there was no explanation given for rejecting his complaints and testimony about the pain he experienced. The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. *Reddick v. Chater*, 157 F.3d 715, 722 ((9th Cir. Cir. 1998). The ALJ's findings must be supported by specific, cogent reasons. *Reddick*, 157 F.3d at 722. If a claimant produces objective medical evidence of an

**Memorandum Decision and Order - Page 9**

underlying impairment, an ALJ may not reject a claimant's subjective complaints of pain based solely on lack of medical evidence.  *Burch v. Barnhart*, 400 F.3d 676, 680 ((9th Cir. Cir. 2005).  *See also Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 ((9th Cir. Cir. 1997) (an ALJ may not discredit a claimant's subjective testimony on the basis that there is no objective medical evidence that supports the testimony).  Unless there is affirmative evidence showing that the claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting pain testimony.  *Burch*, 400 F.3d at 680.  General findings are insufficient; the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.  *Reddick*, 157 F.3d at 722.  The reasons an ALJ gives for rejecting a claimant's testimony must be supported by substantial evidence in the record.  *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1296 ((9th Cir. Cir. 1999).

   In evaluating credibility, the ALJ may engage in ordinary techniques of credibility evaluation, including considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct, claimant's daily activities, claimant's work record, and testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which claimant complains.  *Thomas v. Barnhart*, 278 F.3d 947, 958-59 ((9th Cir. Cir. 2002).  Also, the ALJ may consider the location, duration and frequency of symptoms; factors that precipitate and aggravate those symptoms; amount and side effects of medications; and treatment measures taken by claimant to alleviate those symptoms.  *See* Soc. Sec. Ruling 96-7p.

   The ALJ did not properly evaluate Petitioner's credibility in this case.  In rejecting Petitioner's subjective complaints about the intensity and severity of his pain, the ALJ relied

**Memorandum Decision and Order - Page 10**

upon Petitioner's description of a "typical" day given during the hearing. (AR 28). During that "typical" day, Petitioner gathered up some small hand tools, drove to Jerome, and fixed a turn signal switch on a friend's car. The ALJ also noted that Petitioner has earned about $300 from various odd mechanical jobs over the course of 2005. The ALJ further relied upon Petitioner's testimony that he only takes over the counter Ibuprofen to manage his daily pain. Finally, the ALJ noted that Petitioner drove himself to the hearing, a two hour drive, and only rested for fifteen minutes.

However, the ALJ grossly mischaracterized the Petitioner's testimony. While Petitioner did testify that the day before the hearing, a Sunday, he drove to a friend's house and worked on the turn signal of his car, Petitioner did not testify that this day represented a "typical" day's activities. He testified that his pain on an average day begins at an eight on a scale of one to ten, and after taking Ibuprofen the pain is dulled but never gone. (AR 691). Despite being able to work on his friend's car, Petitioner testified he was in constant pain. (AR 691). Because of the pain, it took him more than five hours to perform a simple repair. (AR 691). Petitioner has begin doing odd jobs for people, fixing cars and the like, but does so out of financial necessity and only does about two odd jobs each month. (AR 692-93, 700). He also would have had someone drive him to the hearing if that had been possible, but instead he drove himself and endured the pain. (AR 698-99). "It is well established that sporadic or transitory activity does not disprove disability," and merely indicates that Petitioner may have been partially functional on that particular day. *Smith v. Califano*, 637 F.2d 968, 971–72 (3rd Cir. 1981). "Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity." *Smith*, 637 F.2d at 971.

**Memorandum Decision and Order - Page 11**

Evidence from treating and consulting sources in the medical record supports Petitioner's claims that he cannot sit, stand or walk for significant periods of time without pain, and that he could not work a full eight hour day on a consistent full-time basis without pain or having to miss work. Plaintiff testified he does not believe he could continue working for a full forty hour work week, and he does not believe he can do odd repair jobs on a consistent basis because of his pain. (AR 693, 701). The best position to alleviate the pain is lying down or sitting. (AR 692). Petitioner's physical therapist, Dean Mayes, gave Petitioner a full functional assessment on September 15, 2000, before his amended onset date, and at that time was of the opinion that while he tested at a "medium" work level, Petitioner could not function consistently at this level or any other level, and that his condition would likely worsen. (AR 325-30).[1] On August 1, 2001, Dr. Lobb, Petitioner's treating physician, did a medical assessment based upon the findings from a previous MRI scan and was of the opinion that Petitioner could only stand or walk three out of eight hours in a day, and sit four hours out of an eight hour day, for a total of only seven working hours. (AR 370-72).

Other treating physicians have given their opinions concerning disability as well, all of which are based upon findings contained in objective medical evidence. Spinal specialist and

---

[1] In Dean Mayes's report, (AR 329), he indicated:

> I do not believe he could tolerate working on a persistent, regular basis because of his asthma and overall physical condition. Mr. Osborn does present observable and significant dysfunction of his lower back. This is not conducive to doing work that he has done in the past, namely mechanic work. It is unknown what type of work that Mr. Osborn can do on an ongoing, regular basis. I believe he would become very frustrated with his employment if he was to attempt working even at a medium work level or less. It does not appear that his condition is changing for the better. He is under medical care, and this is helping maintaining him but not improving him. His back condition will very likely continue to bother him and will probably worsen without medical attention. Mr. Osborn is not able to get medical attention at the present time because of his finances.

**Memorandum Decision and Order - Page 12**

treating physician Dr. Hanscom felt Petitioner was disabled in his report of March 20, 2002, as did consulting physician Dr. Verst, based upon objective medical findings from an MRI of Petitioner's cervical and lumbar spine. (AR 475-77, 479, 481-82). Dr. Wasilewski, the surgeon who repaired Petitioner's rotator cuff tear in his left shoulder, was also of the opinion that without repair of his right shoulder "he will probably not be employable doing any physical activity and would probably be, hence, somewhat disabled." (AR 498). Petitioner was not able to have further shoulder surgery due to inadequate financial resources. (AR 499).

While the treating physicians' conclusions concerning disability are not determinative, all of them were based upon the objective medical findings from CT scans, surgery, x-ray, and functional assessments over the course of long-term treatment and therefore present persuasive evidence. The ALJ failed to give clear and convincing reasons for rejecting these opinions nor did she set forth any specific reasons for rejecting their conclusions. *See Gallant v. Heckler*, 753 F.2d 1450, 1455 ((9th Cir. Cir. 1984) (ALJ must give clear and convincing reasons for rejecting medical source opinions from treating physicians that bear upon the ultimate issue of disability).

There is other considerable objective medical evidence in the record that detracts from the ALJ's conclusions. Petitioner has been diagnosed with "severe" degenerative disc disease in his lumbar spine and impingement syndrome resulting in pain in his right leg. Degenerative disc disease is also present to a lesser degree in his cervical spine area. His spinal conditions have worsened over the years, and have been documented by x-ray and CT scans. (AR 195, 368, 489-92). He underwent rotator cuff surgery to repair a "massive" tear in his left shoulder, but still experiences pain in both shoulders due to long term damage to his left shoulder, (AR 503), and an unrepaired rotator cuff tear in his right shoulder. (AR 483-86, 493, 498). In January 2004,

**Memorandum Decision and Order - Page 13**

Petitioner's physician, Dr. Lobb, indicated he suffered from osteoporosis, confirmed by a bone scan which was "markedly abnormal, placing you into a significant osteoporotic category which will explain the slowly healing fracture of your left ankle as well as fractures of a couple of ribs on the left side.  This would also explain some increasing difficulty with low back pain." (AR 497)

All of the medical reports in the record note Petitioner's complaints of persistent back pain, and they are replete with objective clinical findings that support and confirm his allegations of severe and chronic pain.  The Court finds that, based on the above, the ALJ provided unsatisfactory reasons for discounting Petitioner's credibility, and her findings were unsupported by substantial evidence based upon the record as a whole.

C.      **Residual Functional Capacity and Hypothetical Posed to Vocational Expert.**

Petitioner asserts that the ALJ's finding that he can perform sedentary work based upon the hypothetical posed to the vocational expert is in error.  The Petitioner contends that the ALJ failed to consider how a restriction on bending, stooping, or squatting would erode the sedentary occupational base.  In addition, Petitioner argues that the hypothetical that the ALJ adopted did not account for all of Petitioner's limitations, specifically his inability to work on a regular and continuing basis.

At the fourth step in the sequential process, the ALJ determines whether the impairment prevents the claimant from performing work which the claimant performed in the past, *i.e.*, whether the claimant has sufficient residual functional capacity to tolerate the demands of any past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv).  A claimant's residual functional capacity is the most he can do despite his limitations.  20 C.F.R. § 404.1545(a).  An

ALJ considers all relevant evidence in the record when making this determination. *Id.* Generally, an ALJ may rely on vocational expert testimony. 20 C.F.R. § 404.1566(e); *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). An ALJ must include all limitations supported by substantial evidence in his hypothetical question to the vocational expert, but may exclude unsupported limitations. *Bayliss*, 427 F.3d at 1217.

At the hearing, the vocational expert was given three hypotheticals. In the first, she was asked what a person with Petitioner's educational background could do if he was limited to lifting 10 pounds, standing or walking for two out of eight hours and sitting for six, no bending, squatting, or stooping of any significance, no overhead lifting, no kneeling, crawling or crouching, and occasional climbing of stairs. Under those circumstances, the expert stated an individual could perform a wide range of unskilled sedentary jobs. (AR 710). The occupational base of unskilled sedentary jobs would be significantly eroded by as much as fifty percent if a limitation was added that the individual would need to change postures or positions frequently. (AR 712). In the last hypothetical, the expert was asked what would happen to the occupational base if the individual either missed work or had poor performance due to chronic pain. (AR 712). Under those circumstances, the expert opined that all work would be precluded. (AR 713).

In his findings, the ALJ rejected Petitioner's subjective complaints as noted above, and found that Petitioner could perform the full range of sedentary unskilled work. (AR 29). Even with the limitations described in the second hypothetical posed to the vocational expert, the ALJ found that a significant number of sedentary occupations remained that Petitioner could perform. (AR 31-32). The ALJ therefore rejected any additional limitations due to missed work in the

third hypothetical, based largely upon the ALJ's determination that Petitioner was not credible. (AR 29).

The ALJ's residual functional capacity finding is not supported by substantial evidence in the record.  Because the ALJ improperly determined that Petitioner was not fully credible concerning his pain, he rejected the vocational expert's opinion that if Petitioner's limitations were credible, then he would be disabled.  The vocational expert opined that all work would be precluded if an individual had to miss work or suffered poor job performance due to chronic pain.  In making her RFC determination, the ALJ failed to consider the medical opinions noted previously that Petitioner could not work full-time on a sustained basis.  *See Gallant v. Heckler*, 753 F.2d 1450, 1454 ((9th Cir. Cir. 1984) ("A man who cannot walk, stand or sit for over one hour without pain does not have the capacity to do most jobs available in the national economy.") (quoting *Delgado v. Heckler*, 722 F.2d 570, 574 ((9th Cir. Cir. 1983)).  By improperly evaluating the medical evidence, the ALJ rejected the vocational expert's opinion that all work would be precluded.  Yet medical source statements about what an individual can do is relevant evidence that the ALJ must consider together with other relevant evidence when assessing an individual's RFC.  Social Sec. Ruling 96-5p, 1996 WL 374183 at *5.

In the record, it is also unclear whether the vocational expert considered the limitations on bending, stooping, and squatting.  At the hearing, the ALJ posed that the individual "could not do any stooping, bending, squatting of any significance."  (AR 709) (emphasis added).  To the Court, this language suggests that occasional stooping, bending or squatting may be required. In that situation, the expert opined that an individual could perform the full range of sedentary unskilled occupations.  (AR 710).  In the written opinion, the ALJ found that even with a

complete prohibition on stooping, bending or squatting, an individual could perform the full range of sedentary unskilled work. (AR 29). However, there is a difference between an ability to stoop occasionally and a "complete inability to stoop [which] would significantly erode the unskilled sedentary occupational base and a finding that the individual is disabled would usually apply[.]" Social Sec. Ruling 96-9P, 1996 WL 374185 at *8. It is unclear from the language used by the ALJ at the hearing whether the vocational expert would have changed her opinion had she been given a hypothetical that unequivocally prohibited stooping, bending or squatting.

## V.
## Conclusion

Based on its review of the entire record, the Court finds that the Commissioner's decision is not supported by substantial evidence and is the product of legal error. Therefore, the Commissioner's decision finding that the Petitioner is not disabled within the meaning of the Social Security Act will be reversed and remanded.

## **ORDER**

Based upon the foregoing, the Court being otherwise fully advised in the premises, **IT IS HEREBY ORDERED that:**

1) Plaintiff's Petition for Review (Docket No. 1) is **GRANTED**.

2) This action shall be **REMANDED** to the Commissioner for further proceedings consistent with this opinion

3) This Remand shall be considered a "sentence four remand," consistent with 42 U.S.C. § 405(g) and *Akopyan v. Barnhart*, 296 F.3d 852, 854 ((9th Cir. Cir. 2002).

DATED: March 21, 2008

Honorable Mikel H. Williams
Chief United States Magistrate Judge